# The Steamship Dock Company *versus* Heron's Administratrix.

1. At common law there is no lien against stock for debts in favour of the corporation issuing the stock.

2. When such lien exists it is by statutory authority, either expressed in the act of incorporation, or in by-laws made by authority of the act.

3. A stockholder whose estate was insolvent, died indebted to a corporation; after his death the directors passed a resolution prohibiting the transfer of stock by any one indebted to the company: his administratrix afterwards sold the stock, the purchaser having no notice of the by-law: *Held*, that the company was bound to permit a transfer of the stock.

ERROR to the District Court of *Philadelphia*.

This was an amicable action and case stated, between the administratrix, &c., of Alexander Heron, deceased, to the use of L. Harwood, against The Philadelphia Steamship Dock Company.

The defendant is a corporation for providing wharf and dock room for vessels. The capital stock is not to exceed 2000 shares of $100, "and shall be transferable under such regulations as the managers shall establish." Heron, the decedent, owned at the time of his death, April 9th 1865, 34 shares of stock, the stock being transferable only by assignment on the books of the company in person or by attorney in presence of the president or treasurer. Heron was at the time of his death indebted to the company, and his estate was insolvent. *After* his death the company passed a resolution prohibiting the transfer of stock by any one indebted to the company till the debt was paid or secured.

After the passage of this resolution, Harwood purchased Heron's stock of the administratrix and paid for it, without knowledge of his indebtedness or of the above resolution. He received the certificates and a power of attorney to transfer, and presenting them to the proper officers of the company, demanded a transfer, which was refused on account of Heron's indebtedness. The court below gave judgment for the plaintiff, in accordance with the terms of the case stated.

*R. C. McMurtrie*, for plaintiff in error.—The charter gave the right to pass the resolution; without that it was legal: Waln *v.* Bank of North America, 8 S. & R. 89. The administratrix, the legal plaintiff, was the owner and debtor. The power to give the lien was vested at Heron's death, and creditors were subject to the right to turn the debt into a lien.

*P. Archer, Jr.*, for defendant in error.—There is no lien at common law upon the stock, for debts due by the shareholders: Angell & Ames on Corp. 355, 3d ed.

And even where there is a power, by charter, a by-law declar-

[Steamship Dock Co. v. Heron's Administratrix.]

ing debts a lien is valid only in the case of banking and other institutions authorized to lend money: Id.

Such lien exists only by virtue of express legislation: Rogers v. Huntingdon Bank, 12 S. & R. 78; Grant v. Mechanics' Bank, 15 Id. 140; Sewall v. Bank, 17 Id. 285; Klopp v. Lebanon Bank, 10 Wright 93; Union Bank v. Laird, 2 Wheat. 390; Stebbins v. Phœnix Ins. Co., 3 Paige Ch. R. 361; Tuttle v. Walton, 1 Kelly (Geo.) R. 43; Insurance Co. v. Smith, 1 Jones 125; Act concerning Canals and Railroads; Act 19th February 1849, § 7, Pamph. L. 11; Act 16th April 1850, § 10, Pamph. L. 486; Act 21st March 1814, § 11; Turnpike Bridge and Plank Road Co.'s Act, 26th January 1849, § 5, Pamph. L. 11; Meliorucchi v. The Royal Exchange Co., 1 Eq. Ca. Abr. 9; Gibson v. The Hudson's Bay Co., 1 Str. 645; 7 Vin. Abr. 125, pl. 2; Child v. The same Co., 2 P. Wms. 207.

There can be no "implied lien:" Nelson v. London Ass. Co., 2 Sim. & S. 292; Sargent v. Franklin Ins. Co., 8 Pick. 90; Nesmith v. Washington Bank, 6 Pick. 324; Tuttle v. Walton, 1 Kelly (Geo.) R. 43; Downer's Adm'r. v. Zanesville Bank, Wright's Ch. (O.) R. 477; Bates v. Insurance Co., 3 Johns. Cas. 248.

The company did not enact the resolution until after his death, when the insolvency of his estate was ascertained. Action then was too late: Bosler v. Bank, 4 Barr 32; Perrine v. Insurance Co., 22 Ala. 577; The People v. Crockett, 9 Cal. 112. Knowledge of the lien must be shown: Spence v. Whitaker, 3 Port. R. (Ala.) 297; Fitzhugh v. Bank, 3 Monroe's Rep. 126; 3 Paige Ch. R. 361; 6 Pick. 324; 10 Id. 453; 9 Cal. 112; Murray v. Williamson, 3 Binn. 135; 2 Smith's Lead. Cas. 329; 5 Casey 360; 4 Wright 501; 10 S. & R. 10; 2 Jones 64; 9 Casey 105; 12 Wright 58; 2 Kent. Com. 516.

The opinion of the court was delivered by

THOMPSON, J.—It is clear that there is no lien at common law against stock for debts in favour of the corporation issuing the stock: Ang. & Ames on Corp., § 355, and authorities there referred to. It is obvious that a different rule would subvert the wholesome doctrine of the common law against secret liens. When such a lien exists, it is by statutory authority, either expressed in the act of incorporation or by by-laws made by authority of the act. It is so by several general acts in this state—for instance, the General Bank Act of 1850, § 10; also, the General Canal and Railroad Act of 1849, § 7; and in the Turnpike, Bridge and Plank Road Act of 1849, § 8, and perhaps in some special instances.

Whether a mere by-law would be sufficient to create a lien on stock for a general balance due the company in case of trading, manufacturing or other corporations not engaged in loaning

[Steamship Dock Co. *v.* Heron's Administratrix.]

money, seems not only to be doubted but generally denied. Cer tainly I think it would not be, unless notice of the by-law were brought home to a purchaser of stock before the purchase.

But it is not indispensable in this case to decide these questions; for no lien is given by the act incorporating the defendants, nor did they pass any by-law to create a lien, supposing they had power, till after the death of the testator. The rights of creditors upon the decedent's estate were then fixed, and by no act of theirs could they be changed. The enactment of the by-law was after the death of the decedent, and of this the equitable plaintiff had no notice in any shape or manner. The estate is insolvent, and if by this *ex post facto* by-law of the defendants, they could increase their rights in the distribution of the assets of the estate, they would not only work a wrong to the purchaser of the stock without notice, but would diminish what was legally distributable to creditors upon the decease of the testator. It is very much in principle the case of buying up claims to set-off against the claim of an insolvent estate to a debt. This may not be done : Bosler *v.* The Bank, 4 Barr 32; Singerly *v.* Swain's Administrators, 9 Casey 102. To these might be added many authorities, but it is not necessary. We need not enlarge; and as we perceive no error in the record the judgment is affirmed.